IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Wiley Y. Daniel

Civil Action No. 07-cv-02710-WYD

THOMAS JOHN BEYLIK,

    Applicant,

v.

AL ESTEP, Warden,

    Respondent.

## ORDER OF DISMISSAL

I.  Background

    Applicant Thomas John Beylik is in the custody of the Colorado Department of Corrections and currently is incarcerated at the Arrowhead Correctional Center in Cañon City, Colorado.  Mr. Beylik initiated this action, on December 21, 2007, by submitting a *pro se* Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 to the Court.  Magistrate Judge Boyd N. Boland reviewed the Application, determined that Mr. Beylik appeared to be challenging the denial of his parole and instructed Mr. Beylik to file his claims on a Court-approved form used in filing 28 U.S.C. § 2241 actions.

    Mr. Beylik complied with Magistrate Judge Boland's Order on February 27, 2008.  Nonetheless, Magistrate Judge Boland found the claims Mr. Beylik asserted in the Amended Application to be conclusory and vague.  Mr. Beylik was instructed to file a Second Amended Application and to state his claims in a simple and concise manner in keeping with Fed. R. Civ. P. 8.  On April 4, 2008, Mr. Beylik filed a Second Amended Application.  Although for the most part the claims asserted in the Second Amended

Application are nonsensical, it is clear that Applicant is challenging a violation of his due process rights during his parole proceeding.

Subsequent to Mr. Beylik filing the Second Amended Application, he has filed an overwhelming number of additional pleadings,[1] none of which, except for the May 19, 2008, pleading appear to address Mr. Beylik's denial of parole claim. On October 7, 2008, I entered an order (Doc. # 39) instructing Mr. Beylik to refrain from filing any further, unnecessary, uncomprehensible, or ex parte pleadings in the instant action or the filings would be stricken. Subsequently on October 14, 2008, Mr. Beylik filed a pleading titled, "Notice of Facts and Injuries." Pursuant to the October 7, 2008, Order, the October 14, 2008, pleading was ordered stricken. Mr. Beylik filed two additional

---

[1] On April 30, 2008, Mr. Beylik filed a pleading titled, "Entry of Subpoena Duces Tecum Ex Parte," in which he appears to request state court documents. On May 8, 2008, Mr. Beylik filed a Letter in which he includes a document titled, "Entry of Affidavit of Truth 'Ex Parte,'" and a letter from Mr. Beylik's wife regarding instructions for his release. On August 11, 2008, Mr. Beylik filed a pleading with the Court titled, "Official Record Entry" that includes copies of a document Mr. Beylik filed with Gilpin County regarding the district attorney's failure to prove the claims against him, and a letter he sent to the Colorado Supreme Court requesting an investigation of the district attorney who apparently prosecuted his criminal proceeding in state court. On September 9, 2008, Mr. Beylik filed a fifty-three page pleading in which he appears to assert he is providing "Evidence" to the Court that shows the state court committed "fraud" in prosecuting him. The fifty-three page pleading includes copies of a UCC certificate, a UCC Financing Statement for Mr. Beylik, correspondence from the State of California regarding a UCC filing in the State of California by Mr. Beylik, a letter from the State of Colorado regarding Mr. Beylik's complaint filed with the Mental Health Board about the DOC, a copy of a statement of protest filed with Delta County regarding Mr. Beylik's prosecution and incarceration, a copy of a document titled "Notice and Request of Extraction" requesting the discharge of Mr. Beylik, a copy of a document titled, "Religious-Medical Durable Power of Attorney," a copy of a document titled, "Declaration of Domicile," and several documents asserting that Mr. Beylik is a "sovereign" and is answerable only to God and to his conscience. On September 15, 2008, Mr. Beylik filed a twenty-seven page pleading in which he proclaims he has been wronged, he and his wife are poor, and holding him in prison for his natural life shows malice and fraud. In the September 15 pleading, Mr. Beylik again has attached unnecessary documents including his marriage license, a copy of a release form from the Denver Health Medical Center, a medical expenses statement, and an affidavit of truth that involves claims regarding the conditions of his confinement. On October 7, 2008, Mr. Beylik filed a forty-seven page pleading that is titled, "Notice of Tort Action Filing-Official Record Entry," in which he again challenges his incarceration. Mr. Beylik has attached multiple documents to the October 7, 2008, pleading, some are duplicative of documents he attached to previous pleadings and others are copies of state court filings or requests to the state attorney general.

pleadings, "Interpleader Order for Injunction Under 28 § 2361 Plaintiffs [sic] Advisory of Complaint and Request for Restraint," and "Plaintiffs [sic] Advisory Denial of Parole," both of which were ordered stricken. I find that Mr. Beylik's filings in the instant action are an abuse of the judiciary's limited resources. If in any future action Mr. Beylik files pleadings that are found to be unnecessary, uncomprehensible, or ex parte pleadings Mr. Beylik may be subjected to filing restrictions. *In re Winslow*, 17 F.3d 314 (10th Cir. 1994).

To the extent Mr. Beylik has asserted non-habeas claims, specifically conditions of confinement claims, in the multitude of pleadings and attachments that he has submitted in this action, I find these claims more properly are presented to this Court in a separate 42 U.S.C. § 1983 action. I will refrain from review of these claims in the instant action.

With respect to Mr. Beylik's continual challenges to the validity of his conviction and sentence, I also will refrain from a review of these claims. The claims more properly are raised in an action filed pursuant to 28 U.S.C. § 2254. Therefore, the only claim that properly is before me is Mr. Beylik's challenge of the denial of his parole request, which I will review below.

In the Second Amended Application, Mr. Beylik challenges his forced participation in the Sex Offender Treatment Program (SOTP), his apparent removal from the SOTP, and the denial of his Fourteenth Amendment rights in his parole proceeding. I note that Mr. Beylik pled guilty to Criminal Attempt Sexual Assault on a Child, Victim less than 15, Position of Trust, in violation of Colo. Rev. Stat. §§ 18-2-101 and 18-3-405.3(1), a class four felony. ( First Am. Application (Feb. 27, 2008) (Doc. #

15) at 7.)[2]  I further note that Mr. Beylik was sentenced to three years to life, with the possibility of an indeterminate period of parole of from ten years to life, and with a requirement he participate in an intensive supervision parole program, register as a sex offender, and have no contact with children under eighteen.  (First Am. Application at 7.) Mr. Beylik also is subject to sentencing under Colo. Rev. Stat. §§ 18-1.3-1001–1012.  (First Am. Application at 8.)

II.  Analysis

I must construe the Second Amended Application liberally because Mr. Beylik is a *pro se* litigant.  See *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  If an application reasonably can be read "to state a valid claim on which the plaintiff could prevail, [a court] should do so despite the [applicant's] failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements."  *Hall*, 935 F.2d at 1110.  However, I should not act as a *pro se* litigant's advocate.  See id.

Respondent asserts that this action is not barred by a failure to exhaust state court remedies, a procedural bar, nonretroactivity, or a statute of limitations.  (Answer (Doc. # 23) at 2.)  Respondent further contends that federal judicial review of a state parole proceeding is limited to a determination of whether the decision was arbitrary, capricious, or an abuse of discretion.  (Answer at 3.)  Respondent also contends that (1) there is no constitutional right to parole; (2) the parole interviews are not hearings and are not subject to the Colorado Administrative Procedures Act; and (3) the Parole Board's exercise of its discretion in Mr. Beylik's case was rational.  (Answer at 4-7.)

---

[2] Page numbers referred to in citations to documents filed in this case are the page numbers identified by the Court's Electronic Court Filing system.

In Mr. Beylik's May 19, 2008, pleading, he asserts that he was denied due process in his parole interview because he did not receive notice, the right to a hearing, and the right to present evidence. (May 19, 2008, Pleading (Doc. # 30) at 3.) Mr. Beylik also appears to assert that he has been denied access to the SOTP and as a result has lost the opportunity to be considered for parole. (May 19, 2008, Pleading at 3.) I note, however, that in Mr. Beylik's June 5, 2009, Motion for Appointment of Counsel (Doc. # 50) he asserts that he is participating in the SOTP. Mr. Beylik also appears to assert that he is being forced to participate in the SOTP in violation of his constitutional rights.

The Due Process Clause of the Fourteenth Amendment guarantees due process when a person may be deprived of life, liberty, or property. U.S. Const. amend. XIV, § 1. "[T]he Due Process Clause shields from arbitrary or capricious deprivation those facets of a convicted criminal's existence that qualify as liberty interests." *Harper v. Young*, 64 F.3d 563, 564 (10th Cir. 1995) (internal quotation marks and citations omitted), *aff'd*, 520 U.S. 143 (1997). Before determining whether an applicant's procedural or substantive due process rights have been violated, the court must determine whether the applicant has a liberty interest. Liberty interests protected by the Fourteenth Amendment may arise either from the Due Process Clause itself or from state law. *Hewit v. Helms*, 459 U.S. 460, 466 (1983), *overruled in part on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995). State-created liberty interests are found only under limited circumstances:

> States may under certain circumstances create liberty interest which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Sandin*, 515 U.S. at 483-84 (citations omitted).

When an inmate alleges a violation of his procedural due process rights, the court must first determine whether a liberty interest exists. If a liberty interest does exist, the court must determine (1) the appropriate procedural protections due to the inmate to prevent arbitrary abrogation of the liberty interest; and (2) whether the inmate was afforded those protections. *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974) (stating that an inmate found to have a liberty interest is entitled to "those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated"). When an inmate alleges a violation of his substantive due process rights, and a liberty interest is found to exist, the court must determine if the deprivation was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n. 8 (1998).

A federal habeas review, however, of a parole board's decision is limited. A federal court reviews "the Parole Board's action for abuse of discretion, asking whether the Board's action resulted in an abridgement of the petitioner's constitutional rights." *Wildermuth v. Furlong*, 147 F.3d 1234, 1236 (10th Cir. 1998) (internal quotation marks omitted and citations omitted); *see Schuemann v. Colo. State Bd. of Adult Parole*, 624 F.2d 172, 173 (10th Cir. 1980) (reviewing the Parole Board's decision to determine if it was arbitrary, capricious, or an abuse of discretion).

After reviewing the file in this action, including the Affidavit of the Parole Board Chairman, David L. Michaud (Answer at Ex. A.), I conclude that the Parole Board's decision denying Mr. Beylik's application for parole was not arbitrary, capricious, or an abuse of discretion for the reasons stated below.

"[P]arole determinations inherently do not lend themselves to concrete and identifiable standards." *Schuemann*, 624 F.2d at 174.  The decision whether to release an inmate on parole is "subtle and depends on an amalgam of elements, some of which are factual but many of which are purely subjective appraisals by the Board members based upon their experience with the difficult and sensitive task of evaluating the advisability of parole release." *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 9-10 (1979).  The decision turns on a "discretionary assessment of a multiplicity of imponderables." *Id.* at 10 (internal quotation marks and citation omitted).

The United States Constitution itself does not create a protected liberty interest in a prisoner's release prior to the expiration of a valid sentence.  *Id.* at 7.  Mr. Beylik possesses "no vested right in a particular parole date or parole hearing eligibility date." *Chambers v. Colo. Dep't of Corrections,* 205 F.3d 1237, 1242 (10th Cir. 2000).  Furthermore, a state law only creates a federally protected liberty interest if it places substantive limitations on official discretion.  *See Kentucky Department of Corrections v. Thompson*, 490 U.S. 454, 462 (1989).  Under state law, Mr. Beylik is not entitled to parole prior to completion of the incarceration period ordered by the sentencing court. *Thiret v. Kautzky*, 792 P.2d 801 (Colo. 1990).

Furthermore, no Colorado law creates any limits on the procedures to be used by the Parole Board when it considers Mr. Beylik's parole application.  The decision to grant parole or absolute release to an inmate incarcerated for an indeterminate sentence under the Sex Offender Lifetime Supervision Act,  Colo. Rev. Stat. §§ 18-1.3-1001–1012, is vested within the sound discretion of the Colorado Parole Board.  *See Christensen v. People*, 869 P.2d 1256 (Colo.1994) (construing earlier version of the

7

Act). Therefore, the State of Colorado has not created a constitutionally protected liberty interest in the granting of parole, and Mr. Beylik is not entitled to the *Wolff* due process protections in the parole proceedings at issue in this case.

Furthermore, the statutory procedure was followed in Mr. Beylik's case. The guidelines for the Parole Board to follow in a parole proceeding are set forth in Colo. Rev. Stat. § 17-2-201(9)(a)(I) as follows:

> Whenever an inmate initially applies for parole, the board shall conduct an interview with the inmate. At such interview at least one member of the board shall be present. Any final action on an application shall not be required to be made in the presence of the inmate or parolee, and any such action shall require the concurrence of at least two members of the board. When the two members do not concur, a third member shall review the record and, if deemed necessary, interview the applicant and cast the deciding vote. Any subsequent application for parole shall be considered by the board in accordance with the provisions of section 17-2-201(4)(a).

In Mr. Beylik's case, a member of the Parole Board rejected Mr. Beylik's parole application because of aggravating factors, inadequate time served, public risk, and need of continued correctional treatment, and a second member concurred. (Answer, Ex. A at 2-3.) The application also was denied because an assessment of Mr. Beylik's potential to be a sexually violent predator had not been completed. (Answer, Ex. A at 2-3.)

Although these reasons are not explained in any great detail, they are sufficient. *See Schuemann*, 624 F.2d at 174 (finding that the Parole Board's concern about the short time served for a serious offense was a sufficient and proper reason to deny parole). "It would be discordant to require unduly specific and detailed reasons from a Board vested with a subjective, predictive, and experimental function." *Id.* Therefore, the Parole Board's denial of Mr. Beylik's request for a parole was not arbitrary,

8

capricious, or an abuse of discretion.

As for Mr. Beylik's claim that he was coerced into submitting a letter to the SOTP administrators detailing the intimate details of his crime, Mr. Beylik appears to be asserting a self-incrimination claim.  (May 19, 2008, Pleading at 4.)  The Supreme Court has rejected a self-incrimination claim asserted by a sex offender who lost certain privileges for refusing to participate in a sex offender treatment program that required disclosure of sexual behavior information by the prisoner.  *See McKune v. Lile*, 536 U.S. 24 (2002).  Therefore, Mr. Beylik was not denied his due process rights when prison staff required him to disclose his sexual behavior as part of his participation in the SOTP program.

Furthermore, to the extent Mr. Beylik asserts that he is being forced to participate in the SOTP program, and if he does not participate he will not be considered for parole, the claim lacks merit.  Mr. Beylik was convicted of a sex offense in the criminal case for the sentence is now is serving.  Therefore, he was afforded all the process he was due for prison staff to classify him as a sex offender, *see Neal v. Shimoda*, 131 F.3d 818 (9th Cir. 1997) (*Neal*, which is heavily relied on by the Tenth Circuit in *Chambers*, found that where an inmate is convicted of a sex offense in an adversarial setting prison officials need only notify the inmate of the sex offender classification.), and to require that he participate in the SOTP, *Chambers*, 205 F.3d 1237.  Thus, the Parole Board was free to consider Mr. Beylik's participation in the SOTP when deciding his ability to be paroled without violating due process principles.

### III.  CONCLUSION

Mr. Beylik has not shown he was deprived of a liberty interest.  His due process claims, therefore, fail, and the action will be dismissed on the merits.  Accordingly, it is

ORDERED that the 28 U.S.C. § 2241 Application is DENIED and the action is DISMISSED WITH PREJUDICE on the merits. It is

FURTHER ORDERED that each party shall bear his own costs and attorney's fees.

Dated October 15, 2009.

BY THE COURT:

s/Wiley Y. Daniel
WILEY Y. DANIEL, Chief Judge
United States District Court